# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED C. LOMBARDELLI, | CASE NO. 1:08-cv-00658-AWI-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS CARTER, SANCHEZ, HALSEY, AND VOGEL'S MOTION FOR SUMMARY JUDGMENT BE GRANTED (DOC. 76) |
| v. | |
| K. HALSEY, et al., | |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**Findings And Recommendations**

I.  **Background**

Plaintiff Alfred C. Lombardelli ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding against Defendants E. Ortiz, S. Smyth, I. Sanchez, K. Halsey, K. Carter, and R. Vogel. On January 13, 2012, Defendants Carter, Sanchez, Halsey, and Vogel filed a motion for summary judgment. Defs.' Mot. Summ. J., Docs. 76, 77, 78.[1] Plaintiff filed an opposition on March 15,

---

[1] Defendant Smyth also moved for summary judgment. However, Defendant Smyth later withdrew his motion. Withdrawal of Mot., Doc. 91. Defendant Smyth's arguments will thus not be addressed.

1 2012.² Docs. 85, 86. On March 26, 2012, Defendants filed a reply. Doc. 88. The matter is submitted pursuant to Local Rule 230(l).

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

---

² Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on January 10, 2012. Second Informational Order, Doc. 75; *see Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1 form of affidavits, and/or admissible discovery material, in support of its contention that the
2 dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must
3 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
4 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*
5 *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*
6 *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the
7 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
8 nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*
9 *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

10       In the endeavor to establish the existence of a factual dispute, the opposing party need not
11 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
12 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
13 trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
14 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
15 *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963
16 amendments).

17       In resolving a motion for summary judgment, the court examines the pleadings,
18 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
19 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477
20 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
21 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*
22 *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

23       Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply
24 show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as
25 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
26 issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

27
28

## III. Statement Of Facts[3]

Plaintiff is a prisoner properly in the custody of the CDCR. Pl.'s Dep. 12:13-14, Sept. 22, 2011; Rose Decl. at 6-7. At all times relevant to this suit, Plaintiff was incarcerated at California State Prison Corcoran, located in Corcoran, California. Rose Decl. at 6-7. Plaintiff is not a doctor nor does he have any medical training. Pl.'s Dep. 98:9-15. Defendant Carter is a Correctional Officer at California State Prison Corcoran. Carter Decl. ¶ 1. Defendant Halsey is a Correctional Officer at California State Prison Corcoran. Halsey Decl. ¶ 1. At all times relevant to this suit, Defendant Ortiz was a Correctional Counselor at California State Prison Corcoran. Defendant Oritz is retired. Ortiz Decl. ¶ 1. Defendant Sanchez is a Correctional Officer at California State Prison Corcoran. Sanchez Decl. ¶ 1. Defendant Smyth is a Correctional Officer at California State Prison Corcoran. Smyth Decl. ¶ 1. Defendant Vogel is a Correctional Sergeant at California State Prison Corcoran. Vogel Decl. ¶ 1. Currently, Plaintiff is incarcerated at the California Institution for Men in Chino, California. ECF No. 63. Defendants do not have any authority or control over Plaintiff or California Institution for Men in Chino, California. Carter Decl. ¶ 11; Halsey Decl. ¶ 14; Ortiz Decl. ¶ 10; Sanchez Decl. ¶ 11; Smyth Decl. ¶ 2; Vogel Decl. ¶ 12.

### A. February 7, 2007 Incident

On February 7, 2007, Plaintiff engaged in a verbal argument with Defendant Halsey. Halsey Decl. ¶ 2; Ortiz Decl. ¶ 2; Pl.'s Dep. 73:16-18, 76:13-17.[4] Defendant Ortiz heard and observed the argument, and documented it in Rules Violation Report ("RVR") number

---

[3] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff has complied with Local Rule 260(b).

[4] Plaintiff contends that he did not engage in a verbal argument. Rather, the dispute occurred because of Defendant Halsey's persistent unprofessional conduct. Plaintiff's objection is denied. Plaintiff does not deny that he argued with Defendant Halsey, but contends that it was Defendant Halsey's conduct which initiated the argument. This does not dispute Defendants' statement that Plaintiff engaged in a verbal argument with Defendant Halsey.

1  3C-07-02-014, charging Plaintiff with "Behavior Which Could Lead to Force or Violence."
2  Ortiz Decl. ¶ 2. As a correctional staff member, Defendant Ortiz was responsible for maintaining
3  the security and safety of inmates, correctional staff, and the prison. *Id.* ¶ 3.[5] Based solely upon
4  her observations on February 7, 2007, Defendant Ortiz believed that Plaintiff's conduct on
5  February 7, 2007, violated the California Code of Regulations, title 15, § 3005(a), which
6  prohibits behavior that might lead to disorder or violence. Accordingly, Defendant Ortiz
7  documented Plaintiff's behavior on a RVR, and charged him with a violation of California Code
8  of Regulations, title 15, § 3005(a). Halsey Decl. ¶ 3; Ortiz Decl. ¶ 4. Plaintiff contends that
9  Defendant Ortiz falsified facts in the RVR in order to remove Plaintiff from his job assignment
10 as retaliation for Plaintiff exercising his right to Petition for Order to Compel Disclosure of
11 Public Records ("Petition"). Pl.'s Compl. ¶¶ 16, 22, 41; Pl.'s Dep. 61-64. Plaintiff was found
12 not guilty of RVR 3C-07-02-014. Pl.'s Decl., Ex. A. Plaintiff contends that Defendant Ortiz
13 formed an agreement with Defendant Halsey to falsify facts in the RVR, number 3C-02-02-014,
14 in order to remove him from his job assignment as retaliation for exercising his to file the
15 Petition. Pl.'s Compl. ¶¶ 16, 22, 41; Pl.'s Dep. 61-64.

16       Plaintiff did not seek medical attention after Halsey's alleged statement "You're a rat,"
17 and Plaintiff did not suffer a physical injury as a result of Halsey's alleged statement.
18 Pl.'s Compl. 8:19-20, 8:25-28, Doc. 18; Pl.'s Dep. 120:7-20.[6] On February 7, 2007, Defendant
19 Halsey placed Plaintiff in a holding cell. Pl.'s Compl. 8:6-7. Defendant Vogel falsified the
20 holding cell log book to shorten the amount of time that Plaintiff occupied the holding cell. Pl.'s
21 Compl. ¶ 20; Pl.'s Dep. 85-90; Pl.'s Decl. ¶ 7. Defendant Vogel formed an agreement with an
22 unknown officer to falsify a log book to shorten the amount of time that Plaintiff occupied the

---

[5] Plaintiff contends that the RVR was false. Plaintiff does not deny that Defendant Ortiz observed and heard the argument. Plaintiff appears to dispute only the veracity of RVR 3C-07-02-014, which is not the purpose of this fact. Plaintiff's objections is denied.

[6] Plaintiff contends that he suffered headaches as result of Defendant Halsey's alleged statement. Plaintiff is not a medical professional and cannot proffer testimony that requires medical expertise as to the cause of Plaintiff's headaches. Fed. R. Evid. 701; Fed. R. Civ. P. 56(c)(4). Plaintiff's objection is denied.

1  holding cell. Pl.'s Compl. ¶ 20; Pl.'s Decl. ¶ 7.

2  On February 7, 2007, Plaintiff was transferred from Building 2 to Building 1. Pl.'s Dep. 80:17-18. Plaintiff does not have any personal knowledge regarding the identity of the correctional staff member who approved his transfer. *Id.* at 82:17-83:15.[7] Defendant Halsey did not form an agreement with anyone to wrongfully change Plaintiff's housing assignment.[8] Halsey Decl. ¶ 5; Ortiz Decl. ¶ 8; Vogel Decl. ¶ 11. As a Correctional Officer, Defendant Halsey does not have the authority to transfer an inmate to another building.[9] Halsey Decl. ¶ 5; Pl.'s Dep. 81:21-82, 82:17-20, 83:9-15. Defendant Ortiz did not form an agreement with anyone to wrongfully change Plaintiff's housing assignment. Ortiz Decl. ¶ 8. Defendant Vogel did not form an agreement with anyone to wrongfully change Plaintiff's housing assignment. Vogel Decl. ¶ 11. Defendant Halsey continued to tell inmates that Plaintiff was a rat or a snitch. Pl.'s Compl. ¶¶ 24, 44; Pl.'s Dep.103, 104.

**B.    March 27, 2007 Incident**

On March 27, 2007, Defendant Halsey was supervising inmates at California State Prison- Corcoran as they were released to yard. Halsey Decl. ¶ 7. Except for religious materials, inmates are not permitted to bring reading materials out to an exercise yard. The rule is designed to prevent inmates from smuggling contraband or inmate-manufactured weapons onto the yard, concealed in written materials.[10] *Id.* ¶ 6. Defendant Halsey observed that Plaintiff was carrying a

---

[7] Plaintiff contends that the chronology of the events coupled with statements by Defendants Halsey, Vogel, and Ortiz indicated that they formed an agreement to approve the building transfer. However, Plaintiff may only dispute evidence from a declaration by personal knowledge. Plaintiff's objection is denied. Plaintiff in his deposition stated that Defendant Vogel probably put his name on the CDC 154 form, which authorized the move. That form was not produced with regards to this motion.

[8] Plaintiff contends that an agreement was formed, but there is no declaration that is based on personal knowledge. Plaintiff's objection is denied.

[9] Plaintiff contends that Defendants Halsey, Ortiz, and Vogel do have the authority, based on an alleged agreement. Again, there is no declaration that is based on personal knowledge of this agreement. Plaintiff's objection is denied.

[10] Plaintiff contends that written material are allowed on the exercise yard, as it is easy to search books and magazines for inmate-manufactured weapons on the way out of the yard. Pl.'s Decl. ¶ 8. Plaintiff provides no basis of knowledge for his objection. Nevertheless, whatever the rationale of the rule, it appears that Defendant Halsey's actions were pursuant to Title 15, Section 3192 of the California

6

book out to the exercise yard.  Accordingly, Defendant Halsey stopped Plaintiff and inspected the book to determine whether it was religious material.  *Id.* ¶ 8.

Under California Code of Regulations, title 15, section 3192, inmates cannot exchange, borrow, loan, give away or convey personal property to or from other inmates.  *Id.* ¶ 9. California Code of Regulations, title 15, section 3192 is designed to prevent disputes amongst the inmates over personal property. For example, a property dispute could arise if an inmate stole a book from another inmate and claimed that he lawfully purchased or borrowed it from him. Conversely, an inmate could sell a book to another inmate for food or services and later attempt to repossess the book by reporting it as stolen. In order to prevent these types of disputes, all inmates are prohibited from possessing property that belongs to other inmates.[11]  *Id.*

Plaintiff borrowed the book from another inmate.  Pl.'s Dep. 124:19-21.  As he reviewed the book that Plaintiff was carrying, Defendant Halsey determined the book did not belong to Plaintiff. Specifically, Defendant Halsey observed that another inmate's name was written inside the book. *Id.* ¶ 10.  As a correctional staff member, Defendant Halsey is obligated to enforce all of the prison rules and regulations, including California Code of Regulations, title 15, section 3192.  *Id.*  Accordingly, Halsey confiscated the book from Plaintiff in accordance with California Code of Regulations, title 15, section 3192.  Halsey Decl. ¶ 10; Rose Decl. at 5.[12]

**C.     April 10, 2007 Incident**

On April 10, 2007, while on an exercise yard in California State Prison-Corcoran, Plaintiff softly threw a pair of shoes to surrender them to correctional officer Lerma.  Pl.'s Dep.

---

Code of Regulations, which prohibits borrowing of property from other inmates.  Plaintiff's objection is immaterial and will be denied.

[11]  Plaintiff contends that this rule is not enforced with regards to religious books, and that the purpose of the book confiscation was to harass Plaintiff. Pl.'s Decl. ¶ 9.  Again, Plaintiff provides no basis of knowledge for his objection.  There is no exception listed for religious books with regards to Section 3192.  Plaintiff does not dispute that the book was borrowed from another inmate.  Plaintiff's objection is denied.

[12]  Plaintiff contends the book was confiscated to harass Plaintiff. Pl.'s Decl. ¶ 9.  Again, Plaintiff fails to cite any regulation or other evidence that indicates Section 3192 contains an exception, as claimed by Plaintiff.  Without such exception, the plain language of the regulation requires confiscation of property borrowed from another inmate.

7

1  188-89; Pl.'s Decl. ¶ 10.  Because he was working inside building 3C01 when the shoes were
2  thrown, Defendant Vogel did not observe Plaintiff throw the shoes.  Vogel Decl. ¶ 3.  Officers
3  Halsey and Hebron escorted Plaintiff into the program office in handcuffs.  *Id.*  Defendant
4  Officer Halsey informed Defendant Vogel that Plaintiff threw a pair of shoes at him and one of
5  the shoes hit his ankle.[13]  *Id.*

6  Defendant Vogel spoke with Plaintiff.  Plaintiff stated that his handcuffs were cutting off
7  his circulation. Defendant Vogel checked the handcuffs, loosened them, and found that he was
8  able to stick his finger between the handcuffs and both of Plaintiff's wrists.  In addition, Licensed
9  Vocational Nurse S. Reed examined Plaintiff's wrists. Plaintiff was medically cleared to return to
10 his housing unit. Vogel Decl. ¶ 4; Pl.'s Decl. ¶ 11.

11 Defendant Halsey prepared a RVR, number 3C-07-04-009, charging Plaintiff with battery
12 for throwing a pair of shoes at him.  Vogel Decl. ¶ 6.  Under Department procedure, Defendant
13 Vogel prepared a staff report to document his interaction with Plaintiff regarding RVR number
14 3C-07-04-009. *Id.*

15 Plaintiff heard Defendant Vogel state to Defendant Halsey, "Fuck it, Halsey, just state the
16 shoes hit you so we can get rid of this litigator."  Pl.'s Decl. ¶ 10.  He was fully aware of the
17 charge as he formed an agreement with Defendant Halsey to falsify the report. He did not review
18 the report to ensure it was procedurally correct or determine whether the charge was appropriate
19 because he already knew that Defendant Halsey was going to falsify the report.  Pl.'s Compl. ¶¶
20 26, 46.

21 Defendant Vogel played no role in the processing of Officer Epstein's investigative report
22 regarding RVR number 3C-07-04-009.  Epstein Decl. ¶¶ 3, 5-7; Vogel Decl. ¶¶ 9-10; Pl.'s Dep.
23 190:4-6.  Defendant Vogel was not part of an agreement to withhold Epstein's investigative
24 report regarding RVR number 3C-07-04-009 from Plaintiff.  Epstein Decl. ¶¶ 3, 5-7; Vogel Decl
25 ¶¶ 9-10; Pl.'s Dep. 190:4-6.

26 ──────────

27     [13] Plaintiff objects that he did not throw a pair of shoes at Defendant Halsey.  That is not the
   statement of fact, however.  The statement is whether Defendant Halsey told Defendant Vogel that
28 Plaintiff had thrown his shows at him, to which Plaintiff does not dispute.  Plaintiff's objection is denied.

8

**D.     July 28, 2008 Incident**

As a correctional staff member, Defendant Carter is responsible for maintaining the security and safety of inmates, correctional staff, and the prison. Carter Decl. ¶ 2. On July 28, 2008, Defendant Carter was working as a Floor Officer in building 3C02. *Id.* ¶ 3. As part of her duties, Defendant Carter conducted a random search of cell 207, which was assigned to inmates Plaintiff and Cobo. *Id.* During her search, Defendant Carter discovered a fan that was disassembled. Specifically, the fan was missing its front cover. *Id.* ¶ 4. Inmates are permitted to possess approved appliances, including fans, but they cannot disassemble them. The rule is designed to prevent inmates from making inmate-manufactured weapons and to prevent hiding inmate-manufactured weapons and other contraband. *Id.* However, Plaintiff was permitted to disassemble the fan's front cover, as it was designed, in order to clean the fan.[14] Pl.'s Dep. 155; Pl.'s Decl. ¶ 12. As Defendant Carter began to remove the fan from the wall, inmate Plaintiff spoke to her from the bottom tier. Plaintiff continued to speak and ran up several stairs. Plaintiff was stating, "What are you doing? That's my cellie's fan you can't take that." Carter Decl. ¶ 5.[15]

As Defendant Carter continued her search, Plaintiff did not argue or complain, or attract the attention of other inmates. Pl.'s Decl. ¶ 12.[16] When Cobo returned to the cell, Plaintiff stated to Cobo that Defendant Carter had confiscated Cobo's fan.[17] *Id.* ¶ 13. Defendant Carter was concerned that Plaintiff was inciting Cobo to become upset, and Defendant Carter was concerned

---

[14] Defendants contend that Plaintiff's contention regarding the proper policy is unsubstantiated, conclusory, and lacks foundation. The RVR cited by Plaintiff is not admissible as hearsay without an exception. However, Plaintiff as a prisoner may be aware of a policy that permits such disassembly. There is no regulation cited by any party regarding this fact. Plaintiff's objection will be granted.

[15] Plaintiff declares that he was not yelling. Pl.'s Decl. ¶ 12. The Court will modify the statement of facts to reflect that Plaintiff was speaking to Defendant Carter.

[16] Defendants contend that Plaintiff did attract the attention of other inmates because he was arguing and complaining. Carter Decl. ¶ 6. However, when there is a dispute of fact between parties, based on competent declarations and other evidence, such disputes are resolved in favor of the non-moving party. Plaintiff's objection is granted.

[17] Defendant contends that Plaintiff stated to Cobo, "She can't take that fan, don't listen to her." Carter Decl. ¶ 7. Again, disputes of fact are resolved in the favor of the non-moving party.

9

the dispute might become physical.[18]  Carter Decl. ¶ 8.  Because Defendant Carter feared the situation was getting out of hand, she ordered Cobo to "lock up" in his cell.  *Id.*  Cobo refused several orders to "lock up," which further elevated the seriousness of the situation.  Eventually, Cobo complied and locked up.[19]  Carter Decl. ¶ 8.  Defendant Carter believed that Plaintiff's conduct on July 28, 2008, was serious and needed to be documented.  *Id.* ¶ 9.  Defendant Carter believed that Plaintiff's conduct on July 28, 2008, violated California Code of Regulations, title 15, section 3005(c), which prohibits attempting to verbally incite to commit violence.

Accordingly, Defendant Carter documented Plaintiff's behavior on a RVR, and charged him with a violation of California Code of Regulations, title 15, § 3005(c) as a "Disruptive Inmate with the Potential for Violence."  *Id.*  Defendant Carter was not attempting to wrongfully charge Plaintiff with a rules violation.  *Id.*[20]  Defendant Carter's decision to prepare RVR number 3C-08-08-015 was not based upon any lawsuits, inmate grievances, staff complaints, or Men's Advisory Committee activities by Plaintiff.  *Id.*; Pl.'s Dep. 147:13-18, 154:20-21.

### E. August 17, 2008 Incident

On August 17, 2008, Correctional Officer Carter relieved Correctional Officer Sanchez.  Sanchez Decl. ¶ 3.  As they were exchanging equipment, Defendant Sanchez commented that she

---

[18]  Plaintiff contends that he merely told Cobo to lock up and deal with the situation later.  Pl.'s Decl. ¶ 13.  However, Plaintiff cannot testify as to Defendant Carter's state of mind, as he lacks personal knowledge of such information.  Fed. R. Civ. P. 56(c)(4).  Plaintiff's objection is denied.

[19]  Plaintiff contends that Cobo did not refuse several direct orders, because if he had, he would have received a RVR.  There are no facts which indicate that Cobo received a RVR for refusing a direct order here.  However, Plaintiff's citation does not raise a dispute because it does not address the fact.  Plaintiff's objection is denied.

[20]  Plaintiff contends that Defendant Carter, at the behest of Defendant Smyth, purposely wrote the RVR because Plaintiff had named Defendant Smyth as a defendant in his civil rights complaint, and because Plaintiff was a Men's advisory council member.  Pl.'s Decl. ¶ 14.  Plaintiff declares that Defendant Smyth had made it known to Plaintiff that he had "ghost wrote" the RVR.  *Id.*  However, Plaintiff has no personal knowledge of Defendant Carter's state of mind, and thus his declaration cannot be used to raise a dispute as to this fact.  Plaintiff also presents no evidence that raises a genuine dispute of fact of an agreement between Defendants Carter and Smyth to charge Plaintiff with a rules violation report.  The objection is denied.

10

was concerned about Plaintiff because he seemed distant and quiet.[21]  *Id.*  Defendant Carter responded that Plaintiff had stated, "Speaking of Sanchez, I have it in for her. She's going to get her shit alright."[22]  *Id.*  Based upon Defendant Carter's statement, Defendant Sanchez was concerned for her safety.  *Id.* ¶ 5.  Defendant Sanchez did not believe, or have any reason to believe, that Defendant Carter's statement was false.  *Id.* ¶ 4.  On August 18, 2008, Defendant Sanchez reported the incident to her supervisor, Sergeant M. Anderson, who instructed her to document the incident. *Id.* ¶ 6.  On August 18, 2008, Defendant Sanchez documented Plaintiff's statement of "Speaking of Sanchez, I have it in for her. She's going to get her shit alright" in RVR number 3C-08-08-065.  *Id.* ¶ 7.  Defendant Sanchez charged Plaintiff with threatening a peace officer, because she believed it was the most appropriate charge for his statement.  *Id.*  Defendant Sanchez was not part of an agreement to falsely charge Plaintiff with a RVR.  Sanchez *Id.* ¶ 9.  Defendant Sanchez's decision to prepare RVR number 3C-08-08-065 was not based upon any lawsuits, inmate grievances, staff complaints, or Men's Advisory Committee activities by Plaintiff.  *Id.* ¶ 8; Pl.'s Dep. 147:13-18.

## IV. Analysis[23]

### A. Retaliation

---

[21]  Plaintiff contends that Defendants Carter, Sanchez, and Smyth had formed an agreement to falsify a report for threatening Sanchez in order to place Plaintiff in ad-seg because of his litigation and Men's advisory committee activities. Pl.'s Decl. ¶ 17; Matta Decl. ¶¶ 20-24.  Plaintiff lacks personal knowledge of this conversation between Defendants Carter and Sanchez, and his allegations of conspiracy are unsupported.  Inmate Matta's declaration is based in part on hearsay, namely hearing from another inmate Estrada that Defendant Sanchez said she was working to get Plaintiff.  Inmate Estrada's statement to inmate Matta is hearsay without exception.  Such hearsay is inadmissible, and cannot be used to dispute Defendants' facts here.

[22]  Plaintiff contends that he never made that statement. Pl.'s Decl. ¶ 16.  However, that is not the fact presented.  Rather, the fact presented was Defendant Carter stated to Defendant Sanchez this statement.  Plaintiff's objection is denied.

[23]  Defendants have withdrawn their arguments concerning: 1) Plaintiff's allegation against Defendants Ortiz and Halsey regarding RVR 3C-07-02-014, and 2) Plaintiff's allegation against Defendant Vogel for falsely charging him with RVR 3C-07-04-009 on April 10, 2007.  Defs.' Reply 3:11-12, 4:24. Plaintiff has conceded that Defendant Vogel is entitled to summary judgment as to Plaintiff's allegation that Defendant Vogel withheld the investigative employee's report for RVR 3C-07-04-009.  Pl.'s Opp'n 16. Plaintiff also concedes to Defendants' arguments regarding declaratory relief.  *Id.* at 24.  The Court need not discuss these arguments further.

11

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Rhodes* regarding elements of retaliation in prison context). At the summary judgment stage, Plaintiff is required to demonstrate that there remains a genuine dispute of material fact as to each element of the claim. *Brodheim v. Cry*, 584 F.3d 1262, 1269 n.3 (9th Cir. 2009). Pursuing civil rights litigation in court and filing inmate grievances are protected activities. *Rhodes*, 408 F.3d at 567.

### B.     Falsified Log Book On February 7, 2007

Defendant Vogel contends that altering a log book would not chill the First Amendment rights of the average inmate. Defs.' Reply 2:23-3:8. Plaintiff contends only that the facts are in dispute. However, construing the facts in the light most favorable to Plaintiff, falsification of a log book by itself is not an adverse action sufficient for a retaliation claim. *See Brodheim*, 584 F.3d at 1269 (adverse action when person of ordinary firmness would have been chilled in exercise of his First Amendment rights). Defendant Vogel is entitled to judgment as a matter of law regarding this claim.

### C.     Wrongful Transfer On February 7, 2007

Defendant Halsey contends that he did not change Plaintiff's housing assignment because he lacks the authority to do so, and Plaintiff concedes that he does not know who authorized the transfer. Defs.' Mem. P. & A. 12:11-20; Defs.' Reply 3:15-24. Plaintiff contends that Defendants conspired to change Plaintiff's housing assignment. Pl.'s Decl. ¶ 6. However, mere allegations of conspiracy are not sufficient to raise a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(4) (declarations require personal knowledge). Defendant Halsey is entitled to

12

judgment as a matter of law regarding this claim.

      **D.**     **Book Confiscation On March 27, 2007**

      Defendant Halsey contends that the book was properly confiscated because Plaintiff had borrowed it from another inmate, in violation of Title 15, section 3192 of the California Code of Regulations. Defs.' Reply 3:27-4:15. Defendant contends that the confiscation of the book was in furtherance of a legitimate penological goal. *Id.* Plaintiff contends that the confiscation was motivated because Plaintiff had filed a grievance against him. Pl.'s Decl. ¶ 9. However, Plaintiff raises no genuine dispute with regards to the enforcement of section 3192 being a legitimate penological goal. The undisputed facts are that section 3192 is designed to prevent disputes amongst inmates over personal property. Preventing disputes would further institutional security, a legitimate penological goal. There is no evidence presented of an exception to section 3192. Thus, Defendant Halsey's confiscation of the book on March 27, 2007 was in furtherance of a legitimate penological goal. Actions taken in furtherance of a legitimate penological goal are not retaliatory in the prison context. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). There is no genuine dispute of material fact. Defendant Halsey is entitled to judgment as a matter of law regarding this claim.

      **E.**     **Defendant Carter Falsely Issuing RVR 3C-08-08-015 On July 28, 2008**

      Defendant Carter contends that 1) she issued the RVR for a legitimate penological goal and 2) the issuance of the RVR was not because of Plaintiff engaging in protected conduct. Defs.' Reply 6:10-28. Plaintiff contends that the RVR was embellished as retaliation for Plaintiff engaging in First Amendment activities. Pl.'s Opp'n 17-18.

      Based on the undisputed facts, there remains a genuine dispute of material fact with regards to whether there was a legitimate penological goal for the issuance of the RVR for being disruptive. There is a dispute concerning what actually occurred, namely whether Plaintiff yelled obscenities at Defendant Carter, ran up the stairs, attracted the attention of other inmates, and attempted to incite inmate Cobo. There remains a genuine dispute of material fact as to whether the RVR was issued in furtherance of a legitimate penological goal. Thus, Defendant Carter is not entitled to summary judgment on this ground.

However, there is no genuine dispute of material fact regarding retaliatory motive. Plaintiff contends that Defendant Smyth had ghost-written the RVR for Defendant Carter, and that Defendant Carter had an agreement Defendant Smyth to retaliate against Plaintiff. Pl.'s Decl. ¶ 17.[24] Plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent." *Brodheim*, 584 F.3d at 1271. Plaintiff has not put forth sufficient evidence that presents a genuine dispute of material fact that Defendant Carter had conspired with Defendant Smyth to write a false RVR. Mere allegations of an agreement are insufficient. Defendant Carter is entitled to judgment as a matter of law regarding this claim. Because this is the only claim against Defendant Carter, she should be dismissed from this action.

### F. Defendant Sanchez Falsely Issuing RVR 3C-08-08-065[25] On August 18, 2008

Defendant Sanchez contends that she issued the RVR for threatening a peace officer because she was concerned for her safety based on Defendant Carter's statement that Plaintiff had said, "Speaking of Sanchez, I have it in for her. She's going to get her shit alright." Defs.' Reply 7:3-8. Plaintiff contends that Defendant Carter made a false statement. However, that does not raise a genuine dispute regarding Defendant Sanchez's subjective belief in the statement. Based on the undisputed facts, Defendant Sanchez's issuance of the RVR served the legitimate penological goal of furthering institutional security.

Plaintiff also contends that Defendants Sanchez and Carter made an agreement to retaliate against Plaintiff. However, Plaintiff presents no evidence that would raise a genuine dispute of material. Defendant Sanchez is entitled to summary judgment as a matter of law regarding this claim. Because this is the only claim against Defendant Sanchez, she should be dismissed from this action.

---

[24] Plaintiff lacks personal knowledge of an agreement or facts that could reasonably be inferred as an agreement between Defendants Carter and Smyth to retaliate against Plaintiff. Fed. R. Civ. P. 56(c)(4).

[25] Defendants listed this RVR as "3C-07-04-009." The Court presumes this is error and has corrected the RVR listed.

14

### G.     Eighth Amendment And Calling Plaintiff A Rat

Defendant Halsey moves for partial summary judgment regarding Plaintiff's claim that Defendant Halsey violated Plaintiff's Eighth Amendment rights by calling him a rat in front of other inmates in March of 2007. Defs.' Reply 8:16-21. Defendant Halsey contends that the damages should be limited to nominal damages because Plaintiff did not suffer a physical injury. *Id.* Plaintiff contends that he should not be limited to nominal damages for this claim. *Id.*

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002). In the Eighth Amendment context, Defendants have conceded that Plaintiff has stated an Eighth Amendment claim with regards to being called a rat in front of other inmates. However, there is no evidencen presentedthat he suffered physical injury as a result of being called a rat. Plaintiff declares only that he suffered headaches some unspecified time later, which is insufficient to make a showing of physical injury. Thus, Plaintiff is not entitled to receive compensatory damages based on mental or emotional injury without a showing of physical injury for his Eighth Amendment claim.[26] Defendant Halsey is entitled to partial summary judgment here.

### H.     Qualified Immunity

The Court finds that Defendants' motion for summary judgment and partial summary judgment should be granted as stated herein. Thus, the Court declines to discuss Defendants' arguments for qualified immunity.

### V.     Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendants Carter, Sanchez, Halsey, and Vogel's motion for summary judgment

---

[26] Plaintiff is not barred from seeking nominal or punitive damages regarding his Eighth Amendment claim. *Oliver*, 289 F.3d at 630. The prior physical injury requirement is not applicable to Plaintiff's other claims for violation of the First Amendment. *Id.* at 627 n.5 (citing *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998)).

15

1         and partial summary judgment, filed January 13, 2012, be granted as stated herein;

2    2.   Summary judgment and partial summary judgment should be entered in favor of

3         Defendants and against Plaintiff as stated herein;

4    3.   Defendants Carter and Sanchez should be dismissed from this action; and

5    4.   This action proceed on the following claims: (1) the First and Eighth Amendment claims that Defendant Halsey placed Plaintiff in handcuffs that were too tight on February 7, 2007; (2) the First Amendment claim that Defendants Ortiz and Halsey conspired to falsely charge Plaintiff with Rules Violation Report Number 3C-07-02- 014; (3) the First Amendment and nominal damages Eighth Amendment claims that, on February 7, 2007, and March 2007, Defendant Halsey called Plaintiff a "rat" in front of other inmates; (4) the First Amendment claim that, on April 10, 2007, Defendants Halsey and Vogel falsely charged Plaintiff with battery in Rules Violation Report number 3C-07-04-009; (5) the First Amendment claim that, on March 4, 2008, Defendant Halsey threatened to shoot Plaintiff; and (6) the First Amendment claim that on July 13, 2008, Defendant Smyth falsely charged Plaintiff with Rules Violation Report number 3C-08-07-031 for refusing a direct order.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate

///
///
///
///
///
///
///

Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 29, 2012**             /s/ **Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE